Good morning. Good morning, Your Honors. May it please the Court, I'm Ruben Iniguez, and I represent the petitioner, Eric Von Hall, in this matter, and I would like to reserve two minutes of rebuttal time, if I may. The issue before the Court in this federal habeas corpus case is whether Mr. Von Hall's lawyer on direct appeal violated his Sixth Amendment right to effective assistance of counsel. Now, in order to decide that issue, this Court must review the solitary constitutional issue that counsel actually raised and determine whether he failed to present a clearly stronger issue. The only issue that appellate counsel raised was the feeble, futile, and virtually frivolous claim that Mr. Von Hall's sentence, which was a sentence of less than 20 years, 235 months, was cruel and unusual and thus violated the Eighth Amendment. Now, given the nature and quantity of the underlying conviction, 16 counts, six counts of delivery of a controlled substance to a minor, six counts of contributing to the delinquency of a minor, fourth-degree assault, second-degree assault, identity, false identity, false information to police, a sentence of 235 months under Supreme Court precedent, that was not going to be a successful claim. Okay. So I understand what you're focusing on is the motion to suppress. Correct, Your Honor. Correct. All right. So we're under AEDPA review. Can we start there? We are. Okay. So and you're bringing an IAC under AEDPA. So we've got to do the Strickland analysis under both the AEDPA deference and the Strickland analysis. So we've got the double duty there. So I want to get some clarity on your position regarding this. So there was a motion to suppress filed in the trial court, which lost. Correct. Okay. So it was litigated at some point. But you're saying it should have been, it so surely should have been brought on appeal. Yes. So I want to be clear on exactly what conduct of the officers was problematic and exactly what evidence, in your view, should have been excluded, because you've got both. All right. Let's assume that there was some problematic, if there was some problematic conduct. I'm not really sure because a lot of the convictions here have to do with the young woman that was found there that had that, you know, in terms of the activity that happened to her and also your client hiding in the bathroom and giving a false name and all of that. So if he was convicted of several offenses, relatively little evidence, it seems to me, was obtained from the bedroom and the State presented other compelling evidence, including the trial testimony of the victim. So what was the problematic conduct? What was found? And how can you show prejudice here? Well, Your Honor, I think plainly, like I say. You're kind of alleging it generally. And I can see that a lot of, there's no way you can keep the victim from testifying here. And that was a lot of the testimony. So what is the problematic evidence that, what did the officers do wrong and what was the problematic evidence that I don't see that that much evidence was gotten there? Judge, first of all, we did not have a warrant here. So this was a warrantless search of an apartment of a residence. Right. But someone called and heard noise. Yes. And that's, so there's a welfare check. Correct. That's going on. And Papa is the. Third party. Well, he's the owner. He answers the door. Right? So. He answers the door. But, again, and we're looking at, you know, whether or not this motion should have prevailed, either at trial or on direct appeal. Right? Under Oregon State law, and I cited the courts to two, three cases, two of which I think are incredibly important. The Wren case, State v. Wren, State v. Carsey. All right, but they come there on the welfare check, Papa answers the door, and Papa says they can check the apartment to make sure everyone's okay. Right? Because someone's called that there was a ruckus going on. So at what point had the officers, as you put it, confirmed that the occupants were all right? Was it before or after they found the minor here passed out with fresh bruises on her face, or what? Timing is everything here, Your Honor. So here's what happens. Right? They come in. They say, can we come in and make sure everybody's okay? Mr. Papa agreed. The officer testified. They could come in. So they come in. Now, they have somebody that they haven't identified. No, that's not a problem to you. That's not a problem that they come in, because you can infer that he has that authority. But the key is they ask absolutely no questions, and under the Oregon Constitution, you need actual authority. They ask nothing about whether or not he's got any access to, control of, or exclusive use of. But when they later ask your client about permission to search, what was your client's response? Your Honor, here's the problem with that. Your client's response was, you've got to ask Gordon, because it's his apartment. Your Honor, that was after they had already illegally searched. So what? It is proof of actual authority. And if your client says the person with actual authority is the person who gave the authority, I fail to see how that's a winning argument. Well, going back to the prior argument. What in Oregon law requires evidence of actual authority prior to the search? We have to look at you're right about this case. You're not answering my question. Is there anything in Oregon law that requires proof of actual authority be obtained before you actually conduct the search? Oregon law does not allow information obtained after the fact to be used to establish actual authority. I beg to differ. Well, and I did cite, and I will find the citation in the record, Your Honor. With respect to apparent authority, Your Honor is correct. Are you familiar with State v. Bayland? I am not. Oregon Court of Appeals, 1999. The question of whether a person has actual authority at the time consent is given is ultimately a question of law. And the consenting person's relationship to the premises or items to be searched can be proven by facts established after the search. Judge? Going back to context and the prior argument, context here is everything. Well, if the Oregon court says you can prove it with evidence after the search, I fail to see the problem. Because your client is the one that said that the person with actual authority was the person who gave permission. Judge, let me explain the statement, if I will. At the time he was under arrest, he had been taken outside, and Mr. Vaughn Hall explained that statement to say, I'm no longer in the apartment. I'm not there anymore. I'm under arrest. So when I made the statement, you should check with Gordon. Your client said, quote, because it's his apartment. Because I'm no longer in it. He's there. I'm not. It's his apartment. So, but going back to the point of authority, the officers do not prior to the illegal search. And here, that's where counsel and the state court judge and the PCR court got this wrong. There were several intrusions into that room in the apartment. And it's the first one that's the problem. Because if the scope of consent was, can we come inside and make sure everybody's okay, then when the officer, immediately upon hearing that there's two occupants in the back, goes back and enters the bedroom without a warrant, without authority, and sees a female asleep, and the testimony was that from the outset there was no distress, she was not in distress, they have at that point established, she's okay. Then when he goes into the bathroom and finds Mr. Vaughn Hall standing up inside the bathroom, able to speak and able to walk, and takes him outside into the living room, at that point, again, the scope of consent, can we check everybody's okay? That's been established. That's when the search ends. So is she okay even though she has two fresh black eyes? Again, they don't determine that fact, Your Honor, until after Mr. — after they question Mr. Vaughn Hall, after he gives the false information, after they arrest him, take him outside. Then a substantial amount of time later, they go back into the apartment after they've requested consent, finally. And at that point, after they take the female out of the apartment, do they determine that she has freshly bruised eyes, right, and start asking her questions? Again, timing here is everything, and it's the first search that's the illegal search because there's no warrant, there's no actual authority, there's no apparent authority, and the reason there is not is because the officers do not ask any questions. How can you say it would be unreasonable for the State court to determine there was not because the State PCR court did not address that issue. That's why it was an unreasonable application here. The only thing, when we look at the State PCR court and what the court found there was that it was determined that the issue was determined on the credibility of the officers. That's all the PCR court said. And it was Officer Ballard who offered up the testimony I pointed to, and they've decided that Officer Ballard was credible, and that establishes the necessary proof to conclude that there was actual authority. How was that conclusion unreasonable? Your Honor, we have to look at the State PCR court's determination and credibility finding. Credibility was not the issue here. It was whether or not there was authority. So I don't see that finding as being so large to encompass where Your Honor is suggesting it goes. There's no question that the PCR finding was not discursive. But we're required to fill in the blanks. I would respectfully suggest that to fill it in that way would be going too far. Okay. Well, your time's expired, but I'll give you one minute for rebuttal. Okay. Thank you. May it please the Court, I'm David Thompson representing Superintendent Newth. As the Court is aware, the red brief takes the position that the actual authority question isn't even properly before this Court because it wasn't raised below. It's not part of the Certificate of Appealability. It rides on Article I, Section 9 of the Oregon Constitution. And unless the Court has questions about that particular position that the Superintendent has taken, that's all that we have briefed in the red brief. And I'm certainly in agreement with it was not unreasonable for the State Post-Conviction Court to conclude that there was actual authority for Mr. Pompa to have consented to the search. And that's what was found by the Criminal Trial Court. And the question in front of the State Post-Conviction Court was, was there, in effect, any viable issue for... Well, okay, but you argued that the IAC claim concerns counsel's ineffective assistance in relation to pressing a state law right, right, on the client's behalf. Then the claim is unrevealable by a federal habeas court. You cite Estelle and Belamontes, but I don't see how they stand for that proposition. Well, I... How do those cases support your proposition? Yeah, well, our argument on... Well, first of all, Your Honor, the principal argument that we are making here is that an Article I, Section 9 actual authority argument was never made below. And that wasn't the basis for the ineffective assistance. But that's sort of the point of the argument that it was ineffective assistance of counsel not to have made that argument. The argument below, Your Honor, was that it was ineffective assistance for counsel not to have raised an apparent authority argument in the Oregon Court of Appeals on direct appeal. And it was limited to apparent authority. That's the Fourth Amendment standard. And there was no talk about raising an issue, that there was no actual authority, and that's what's required by Article I, Section 9. So that's the problem I see with respect to the... Oh, you're complaining. I take it now you're complaining about the argument that was made to the Oregon Court. Is that correct? I mean... Or the argument that was not made to the Oregon Court. No. And I'm saying, no, this argument was made to the district court. Okay. There's no argument in the district court that counsel was ineffective for not raising an actual authority argument under Article I, Section 9, and that that constitutes ineffective assistance of counsel under the Sixth Amendment. That argument was not made to the district court. And that's our principal argument here for why this issue isn't even properly before this Court for review. Now, in answer to Judge Callahan's question regarding the... If we don't really accept your procedural arguments to reach the merits, what's your argument that Mr. Vaughn Hall has failed to meet his burden under ADPA? And can we — my understanding is that Oregon doesn't exactly have harmless error, but they have something tantamount to it. So even if, let's say, on the first prong, we go with the defendant, why would this be harmless? What was the... I'm in agreement with you, Your Honor. I didn't brief it because I didn't think the issue was properly before this Court. But I'm in perfect agreement with your point that the prejudice prong of the Strickland test would not be met because you can't show that failing to have raised this issue on direct appeal resulted in any prejudice, because what evidence actually would have been excluded? Well, what is the evidence that they got that had to do — because the main part of it was the young — the minor that testified as to the acts that he did on her and, I think, drugging and various things. So what was the evidence that was seized that, if it was wrongly seized, came in at trial? Well, I... Do you even know? I don't even know because Petitioner hasn't identified it. We're talking about the first search of this bedroom, and Petitioner hasn't identified for this Court, didn't identify it below, what evidence we're actually talking about that would have been excluded. There was a second search of the bedroom that produced additional evidence, and apparently the second search isn't at issue. It's the first search that we're talking about, and Petitioner hasn't identified that evidence. So I think with respect to the Estelle question... The second — the second search was as a result of the first search, though, right? Well, the second search was a result of the first search, but it — it was pursuant to consent, and there's no question about the validity of the second search as far as I know. Because the defendant consented in the bathroom? Yeah. The Petitioner consented to it, as well as there was an additional consent from Mr. Pompa. Okay. So I don't think we're talking about the second search. Now, with respect to your specific question regarding Estelle, here's our position on that point. State post-conviction court, in our view, made a legal determination that there was actual authority in Mr. Pompa under Article I, Section 9, to consent to a search of the bedroom. That Article I, Section 9 conclusion is a pure State law conclusion, because it's Article I, Section 9, actual authority. And if that is the predicate for the ineffective assistance claim, our view is that the State court has ruled on a pure State law question that there was actual authority under Article I, Section 9, and that is not reviewable by a Federal court. That's our view, to explain the Estelle point. Okay. Unless the Court has any additional questions? We do not appear to. Thank you. Thank you. Thank you, Your Honor, for the extra time. First, the Court should reject the argument about the scope of the certificate of appealability, and I'd cite you the ER at 3. The State itself, in fact, objected that the magistrate judge, Gelderix, and it, quote, did not make a finding relating to the actual authority of Mr. Poppa to give consent to search. Therefore, the district court judge, because the State objected that there was no finding about actual authority, made two modifications. The first modification was to find that Poppa had actual authority over the entire apartment, including the bedroom. Judge Simon also put in, the analysis applies whether Poppa's authority to give consent was actual or apparent, and he drops a footnote. The Court makes no finding regarding the knowledge of the two officers of Mr. Poppa's actual authority. And then he says, and therefore, the second modification, I'm going to grant you a certificate of appealability. So what the State's trying to do is say, because the certificate, the conclusion of this three- or four-page order, which takes two paragraphs to discuss actual authority, because it only refers to a Fourth Amendment issue, they want to argue, they want to splice hairs and say, oh, Fourth Amendment means apparent authority, it doesn't mean actual authority, so you shouldn't consider this argument that we, in fact, objected to, to get the Court to make findings on and then have them grant the COA. It's just plainly wrong. Now, in terms of the evidence, Judge, the Petitioner did say what evidence was seized. Page 9 of my opening brief, they reentered and seized several items, including shoestrings, a plastic baggie with a crystal-like substance that initially, but erroneously, tested positive for methamphetamine, a syringe, a pipe, several items of clothing, and adult pornography. These items were relevant to the charges. They did contribute to the delinquency of a minor, the distribution of drugs to the minor. So they were relevant, and they were seized later on the second search, but after as a fruit of the initial unlawful search for which there was no authority, no valid consent. So I ask the Court to find a favor in this development. I think we understand your argument. Thank you both for your argument. This matter will stand submitted. Thank you, Judge. Thank you.
judges: Fisher, Clifton, Callahan